IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KA YANG, YIA YANG and
XAI YANG, a minor through
his guardian ad litem,
Daniel F. Schmeeckle,

                                                                  OPINION and ORDER

                    Plaintiffs,

                                                          12-cv-797-bbc

     v.

PORTAGE COUNTY, WISCONSIN,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      After plaintiff Xai Yang was injured in a car accident, defendant Portage County paid $35,000 in Medicaid assistance benefits on behalf of Xai to pay for his medical expenses. When Xai obtained a $25,000 settlement from his insurance company, defendant sought reimbursement for $12,500 under Wis. Stat. § 49.89(5). In response, Xai and his legal guardians brought this lawsuit for declaratory relief under 42 U.S.C. § 1983 in which they contend that § 49.89(5) conflicts with 42 U.S.C. § 1396p and that defendant is entitled to a greatly reduced amount.

      Plaintiffs' motion for summary judgment is ready for review. Dkt. #31. I agree with plaintiffs that § 1396p preempts § 49.89(5), but I cannot simply award the amount they request. Rather, under Wos v. E.M.A. ex rel. Johnson, 133 S. Ct. 1391 (2013), I must hold a hearing to determine how the settlement should be allocated.

1

OPINION

Under Wis. Stat. § 49.89(2), a government entity such as defendant that provides assistance to a Medicaid recipient has a lien on any settlement that the recipient obtains related to his injury. The lien is "equal to the amount of the medical assistance provided as a result of the injury, sickness, or death that gave rise to the claim." Id. Section 49.85(5) describes how the settlement should be allocated: "Reasonable costs of collection including attorney fees shall be deducted first. The amount of assistance granted as a result of the occurrence of the injury, sickness or death shall be deducted next and the remainder shall be paid to the public assistance recipient or other party entitled to payment." In this case, the parties agree that $12,500 should be allocated to attorney fees. Because defendant paid $35,000 in medical expenses on plaintiffs' behalf, defendant argues it is entitled to the remaining $12,500 under § 49.89(5). Plaintiffs do not dispute defendant's interpretation of § 49.89(5), but they argue that § 49.89(5) conflicts with 42 U.S.C. § 1396p, which restricts the circumstances under which state and local governments can impose a lien on property or otherwise attempt to recover Medicaid expenses from a recipient.

Initially, the parties' briefs focused on the proper scope of Arkansas Dept. of Health and Human Services v. Ahlborn, 547 U.S. 268, 280 (2006), in which the Supreme Court interpreted § 1396p as prohibiting a state from imposing a lien except with respect to the portion of the settlement that "represents medical expenses." Id. at 272 (lien invalid under § 1396p because it required "payment out of proceeds meant to compensate the recipient for damages distinct from medical costs—like pain and suffering, lost wages, and loss of

2

future earnings"); id. at 284 ("State's lien is consistent with federal law insofar as it encumbers proceeds designated as payments for medical care."); id. at 285 ("anti-lien provision applies" to everything except "payments for medical care"); id. at 291 (government may not "demand reimbursement from portions of the settlement allocated or allocable to nonmedical damages"). Because the parties in Ahlborn had stipulated to the amount of the settlement that represented compensation for medical expenses, it was not necessary for the court to determine how a settlement should be allocated as a general matter. Id. at 281.

In this case, the parties have not stipulated to an allocation. Further, the settlement is not divided into damages "for" medical or nonmedical expenses and neither side argues that plaintiffs' policy limited the types of damages for which they could be compensated. Thus, Ahlborn does not resolve the parties' dispute.

Defendant argues that Wisconsin is entitled to determine *statutorily* how a settlement allocates medical and nonmedical expenses, at least in the absence of an express allocation in the settlement or a stipulation between the government and the beneficiary. Further, it says that § 49.89(5) represents such a statutory allocation in the sense that it "allocates" all of a settlement for attorney fees and medical expenses unless the settlement is greater than the combination of those two amounts. Because defendant paid more than $12,500 of medical expenses on behalf of plaintiff Xai, it argues that applying § 49.85(5) in this case does not run afoul of 42 U.S.C. § 1396p or Ahlborn. Plaintiffs argue that the court should follow the "pro-rata" allocation method used in Ahlborn, 547 U.S. at 274, which would require the court to (1) determine the total value of the plaintiff's claim; (2) divide the total

value of the claim by the amount of the settlement; and (3) multiply the amount defendant paid by the resulting fraction. Thus, defendant's position is that Ahlborn has no relevance to this case; plaintiffs' position is that Ahlborn provides the controlling method for determining an allocation of damages.

After the parties completed briefing on plaintiffs' motion for summary judgment, the Supreme Court decided Wos v. E.M.A. ex rel. Johnson, 133 S. Ct. 1391 (2013), in which the Court concluded that § 1396p preempted a North Carolina statute that "defines the portion of the settlement that represents payment for medical expenses' as the lesser of the State's past medical expenditures or one-third of the plaintiff's total recovery." Id. at 1397 (internal quotations omitted). I asked the parties to file supplemental briefs to address the effect of the holding in Wos on this case.

Defendant argues that Wos is not controlling because "[t]he principal infirmity with the North Carolina statute was that it 'operate[d] to allow the state to take one-third of the total recovery, even if a proper stipulation or judgment attribute[d] a smaller percentage to medical expenses.'" Dft.'s Br., dkt. #33, at 4 (quoting Wos, slip op. at 7-8). That position is untenable. Although the Court noted that North Carolina's statute could be interpreted as trumping a stipulation or a judgment, the Court did not describe that reading of the statute as the "principal infirmity."

The Court's reasoning was straightforward: "[t]he defect in [North Carolina's statute] is that it sets forth no process for determining what portion of a beneficiary's tort recovery is attributable to medical expenses." Wos, 133 S. Ct. at 1398. In this respect, §

49.89(5) is no different from the North Carolina statute. Like that statute, § 49.89(5) does not set forth an individualized procedure for allocating medical and non-medical expenses. Rather, in every case the statute allocates *all* of the settlement (minus attorney fees) for medical expenses unless the settlement exceeds the amount owed to the state.

Even if defendant were correct that one problem with North Carolina's statute was that it could override a stipulation or a judgment, defendant fails to explain how § 49.89(5) is any different. Section 49.89(5) does not expressly allow parties to stipulate to a different amount and it says nothing about relying on a judgment to make a different allocation. Although § 49.89(5) does not expressly prohibit either possibility, neither did the North Carolina statute.

Defendant says multiple times in its brief that the North Carolina statute is different because "it picked an arbitrary percentage of damages allocable to medical expenses." E.g., Dft.'s Br., dkt. #33, at 2. See also id. at 5 ("[Section 49.89(5)] does not provide for an across-the-board, arbitrary, percentage-based allocation, like the statute in [Wos].") This is false because § 49.89(5) is just as arbitrary; the only difference is that North Carolina's arbitrary number is capped at 33 1/3% but Wisconsin's arbitrary number is 100% of the settlement not devoted to attorney fees. In fact, in explaining why the North Carolina statute was preempted, the Supreme Court compared the North Carolina statute to a hypothetical statute similar to § 49.89(5):

> If a State arbitrarily may designate one-third of any recovery as payment for medical expenses, there is no logical reason why it could not designate half, three-quarters, or all of a tort recovery in the same way. . . . Here the State concedes that it would be "difficult . . . to defend" a law purporting to allocate

5

> most or all of a beneficiary's tort recovery to medical expenses. That is true; but, as a doctrinal matter, it is no easier to defend North Carolina's across-the-board allocation of one-third of all beneficiaries' tort recoveries to medical expenses.

Wos, 133 S. Ct. at 1398-99. Thus, even the defendant in Wos seemed to concede that a statute like § 49.89(5) would be preempted.

Defendant argues that § 49.89(5) does not require a beneficiary to pay 100% of his settlement in all cases because "[t]he actual amount deducted for medical expenses will depend not only on the costs and fees incurred in each individual case, but it is also dependent on the amount of the settlement and the amount of funds available." Dft.'s Br., dkt. #33, at 5. That is true but irrelevant because North Carolina's statute was no different. The North Carolina statute did not require the beneficiary to pay 1/3 of her settlement regardless of the amount of the settlement or the amount owed to the state, as defendant seems to suggest. Rather, the statute required the beneficiary to use the settlement to pay the state all of what he owed, but the amount paid could not exceed 1/3 of the settlement. N.C. Gen. Stat. Ann. § 108A–57(a). In other words, the statute allocated as medical expenses "the lesser of the State's past medical expenditures or one-third of the plaintiff's total recovery." Wos, 133 S. Ct. at 1397. In this respect, the only difference between North Carolina's statute and § 49.89(5) is that § 49.89(5) allocates as medical expenses the lesser of the state's past medical expenditures or *100%* of the plaintiff's total recovery (minus attorney fees). That difference does not strengthen defendant's position but rather proves that Wos forecloses any argument that § 49.89(5) is not preempted by § 1396p. Once the Supreme Court issued Wos, defendant should have conceded preemption because there is

6

no plausible way to distinguish § 49.89(5) from the North Carolina statute.

The next question is how the settlement *should be* allocated. Plaintiffs do not argue that a finding of preemption means that defendant is left without an enforceable lien so that plaintiffs are entitled to keep the entire settlement. Rather, the parties seem to agree that the court still must determine what portion of the settlement may be allocated to medical expenses. This is consistent with what the Court of Appeals for the Fourth Circuit did in E.M.A. ex rel. Plyler v. Cansler, 674 F.3d 290 (4th Cir. 2012), the decision affirmed by the Supreme Court in Wos. E.M.A., 674 F.3d at 311 ("Under the circumstances of the case before us, absent any state-created mechanism for [allocating medical and nonmedical expenses], it will fall to the district court to conduct the appropriate proceedings."). Because the Supreme Court did not question that approach, I will follow it.

As discussed above, plaintiffs believe that the court should allocate damages using the same method as in Ahlborn, 547 U.S. at 274, which would require the court to (1) determine the total value of the plaintiff's claim; (2) divide the amount of the settlement by the total value of the claim; and (3) multiply the amount defendant paid by the resulting fraction. Plaintiffs say in their brief that a "modest appraisal" of the claim is $10,000,000. Plts.' Br., dkt. #32, at 5. Using that estimate, defendant would be entitled to $87.50 under plaintiffs' method. ($25,000 divided by $10,000,000 multiplied by $35,000 is $87.50.) However, the only evidence plaintiffs cite for their estimate is a conclusory affidavit from plaintiffs' counsel, Plts.' PFOF ¶ 2, dkt. #9 (citing Russell Aff. ¶3, dkt. #7), which is inadmissible not only because it fails to provide a basis for the opinion (or even describe

plaintiff Xai's injuries), but because plaintiffs' counsel is ethically prohibited from acting as a witness in his own case. United States v. Marshall, 75 F.3d 1097, 1106 (7th Cir. 1996) ("[C]ounsel is barred from acting as both an advocate and a witness in a single proceeding except under special circumstances.").

Even if the affidavit were admissible, I could not simply adopt plaintiffs' figure. As even plaintiffs acknowledge, the parties in Ahlborn adopted their method as a result of a stipulation, not a determination by the court. To the extent Ahlborn leaves any room for doubt, Wos resolves it. "When the State and the beneficiary are unable to agree on an allocation," the Court stated, "a judicial or administrative proceeding [will] be necessary." Wos, 133 S. Ct. at 1399. Because Wisconsin does not provide a mechanism for resolving the dispute administratively, the responsibility falls on this court to hold a hearing.

The Supreme Court acknowledged that "a fair allocation of . . . a settlement may be difficult to determine," but it stated that there are "objective benchmarks to make projections of the damages the plaintiff likely could have proved had the case gone to trial." Id. at 1400. For example, the Court stated that the worth of "each individual claim will depend both on how likely [plaintiffs] would have been to prevail on the claims at trial and how much they reasonably could have expected to receive on each claim if successful, in view of damages awarded in comparable tort cases." Id. The Court did not explain how to allocate medical and nonmedical expenses once that determination is made, but one reasonable method would be the proportional approach adopted in Ahlborn. Neither side offers a different suggestion. Accordingly, I will direct the clerk of court to schedule a

conference with the magistrate judge so that the parties can determine an appropriate date for the hearing that allows adequate time for any relevant discovery the parties believe they need.

It is my hope that the parties will be able to resolve what remains of the dispute without a hearing. Ahlborn and Wos involved large settlements of $550,000 and $2,800,000 million respectively while the relevant amount in this case is only $12,500. It is likely that the parties already have spent more than that amount litigating this case. It would be unfortunate to expend even more resources on a hearing if there is any chance that the parties can stipulate to an allocation.

Three other issues remain. First, defendant argues that the court must now allocate the entire $25,000 settlement rather than just the $12,500 that remains after attorney fees are deducted. According to defendants, if § 49.89(5) is preempted then the aspect of that statute that gives priority to attorney fees is invalid as well. However, this argument is too little and too late. Plaintiffs did not include a challenge to the attorney fees allocation in their complaint and defendant did not include a counterclaim on this issue in the event that plaintiffs were successful on their claim. Passavant Memorial Area Hospital Associationn v. Lancaster Pollard & Co., No. 11-CV-3116, 2013 WL 1100697, *6 (C.D. Ill. 2013) ("[A] contingent counterclaim is proper under Rule 13(g) of the Federal Rules of Civil Procedure.") (citing 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1431, at 281–82 (3d ed. 2010)). Even now, defendant does not develop an argument in support of a view that § 1396p necessarily preempts the attorney

fees allocation provision. Ahlborn and Wos address limitations on what portion of a settlement the state may allocate to medical expenses; those cases did not address the extent to which the state may *exclude* portions of a settlement from medical expenses. Although there may be plausible arguments in favor of defendant's position, defendant did not make them. Accordingly, the argument is forfeited.

Second, plaintiffs include a conclusory statement in their opening brief that they are entitled to attorney fees under 42 U.S.C. § 1988 as the prevailing party. However, this request is premature because I have concluded that a hearing is necessary to resolve plaintiffs' claim. Plaintiffs may renew their request for attorney fees after the proceedings are completed.

Third, defendant asserted counterclaims for conversion and replevin, dkt. #3, but neither side referred to those claims in the context of plaintiffs' motion for summary judgment. At the conference before the magistrate judge, the parties should discuss a schedule for resolution of those claims.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by plaintiffs Ka Yang, Yia Yang and Xai Yang is GRANTED IN PART. It is DECLARED that 42 U.S.C. § 1396p PREEMPTS the portion of Wis. Stat. § 49.89(5) that allocates medical expenses in a settlement. Plaintiffs' motion is DENIED with respect to their request for an allocation of medical and nonmedical

expenses and their request for attorney fees.

2. The parties are directed to consult the clerk of court for a date and time for a scheduling conference before the magistrate judge to pick a date for a hearing to be held within two weeks of the date of this order and set any deadlines the parties believe they need to prepare for the hearing and for resolution of defendant Portage County's counterclaims.

Entered this 19th day of July, 2013.

                                                        BY THE COURT:
                                                        /s/
                                                        BARBARA B. CRABB
                                                        District Judge